**In re the SIGNATURE GROUP, Debtor.**

**Bankruptcy No. 85–00762.**

United States Bankruptcy Court,
D. Rhode Island.

Dec. 20, 1989.

Sally E. Michael, James Webster, Dicara, Selig, Sawyer and Holt, Providence, R.I., for Signature Group.

Robert D. Wieck, Adler Pollock & Sheehan Corp., Providence, R.I., for First Princeton Capital Corp.

Robert N. Huseby, Robert D. Fine, Licht and Semonoff, Providence, R.I., for Jan W. Dorfman.

William R. Harvey, Sheffield & Harvey, Newport, R.I., for Bank of Newport.

William Gabovitch, William Gabovitch & Co., Boston, Mass., trustee.

ARTHUR N. VOTOLATO, Jr.,
Bankruptcy Judge.

Heard on December 18 and 19, 1989 on the Motion of First Princeton Capital Corporation ("First Princeton") for Relief from Stay to obtain possession of the personal property of the debtor, the Signature Group, Inc., and on the limited objection of Jan W. Dorfman, who asserts a security interest in the proprietary (intellectual) property rights pertaining to said personal property. Also before us is Bank of Newport's Motion for Relief from Stay for possession of the real estate where the personal property is located.

Upon consideration of the evidence presented, particularly the documents enti-

---

tled "Order Authorizing Financing, Consummation of Debtor's Plan of Arrangement, and Discharge from Chapter 11" dated March 28, 1989, the "Agreement of Compromise" dated March 22, 1989 (Exhibits 7 and 3, respectively), and the testimony of Michael Feinstein, President of First Princeton, we find that Dorfman knowingly and willingly relinquished any interest he previously had in the intellectual property rights of the debtor corporation, in exchange for the March 22, 1989 Agreement of Compromise.[1] Alternatively, we conclude that by not objecting to the entry of the Order Authorizing Financing (Exhibit 7),[2] Dorfman waived any right to now contest First Princeton's superior security interest in all of the tangible and intangible personal property of the debtor. Furthermore, we accept Feinstein's testimony that at the time the loan was made, First Princeton did not know about the Agreement of Compromise, and in fact did not learn of said agreement until sometime in July, 1989. We also accept in its entirety, the testimony of Attorney William Riley, counsel for the Signature Group Limited Partnership ("SGLP"), that it was First Princeton's intention, as well as the SGLP and the debtor's, that First Princeton's security interest would extend to both the tangible and intangible assets of the debtor, and that First Princeton would hold a first security position in said assets. The documents relied upon accurately and reasonably support this contention.

Accordingly, for the foregoing reasons, and based upon the entire record, it is ORDERED:

1. That First Princeton has a first priority security interest in all of the personal property of The Signature Group, Inc., including, without limitation, patent No. 270,827 issued by the U.S. Patent and Trademark Office on October 4, 1983, trademark to the rights to the term "Saroca" including Registration No. 1,194,681 issued by the U.S. Trademark Office on May 4, 1982 for the mark "Saroca," and the design for boats in Class 12 (collectively "personal property"), which said security interest shall have priority over any claim and/or interest in said personal property asserted by Jan Dorfman;

2. That First Princeton is granted relief from the automatic stay with respect to all of the personal property of the debtor, both tangible and intangible;

3. That the Trustee is authorized to turn over the personal property to First Princeton;

4. That First Princeton is authorized to sell said personal property in accordance with the terms of its security documents and R.I.GEN.LAWS § 6A–9–101, et seq., and said sale shall discharge any interest, lien and/or claim of Jan Dorfman in said personal property; and

5. That Bank of Newport's Motion for Relief from Stay is granted, and First Princeton, the debtor and the Trustee are ordered to vacate the premises and to surrender the real estate on or before December 29, 1989.

Enter Judgment accordingly.

---

1. Dorfman's alleged retention of rights under the compromise agreement (Exhibit 3, ¶ 3, p. 3) is ineffective as to First Princeton in light of our conclusion that said rights, if any, purport to be a (disguised) security interest, of which First Princeton had no notice—neither actual, constructive, nor imputed.

2. Dorfman's explanation (through counsel) of his failure to object to the entry of the October 1989 financing order, is that he had no need to object, since in his opinion the compromise agreement adequately protected him. There is no evidence to support this contention. In fact, our conclusion is to the contrary, in light of Dorfman's failure to produce any witnesses who would corroborate that contention. *See, e.g., Borror v. Herz,* 666 F.2d 569 (C.C.P.A.1981) ("where ambiguities exist in the record or there is conflicting testimony as to events which [an inventor's] testimony could clear up, a strong negative inference may be reasonable that his testimony would be unfavorable to his case." *Id.* at 574); *Matter of Unit, Inc.,* 45 B.R. 425, 432 (Bankr.S.D.Ohio 1984). Dorfman's reluctance to call witnesses on this point is all the more understandable considering the notation in said Order by the clerk that "[n]o objection per all parties listed in movant's certification per telephone conversations dated 3/28/89. gk"